**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KIMBERLY A. BALL,**

**Plaintiff,**

**v.** **Case No. 25-CV-1700-SCD**

**FRANK J. BISIGNANO,**
***Commissioner of the Social Security Administration,***

**Defendant.**

---

**DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

Kimberly Ball seeks social security benefits based primarily on mental impairments that she says caused significant difficulties getting along with others. She filed her application in 2018 and, since then, she's had three administrative hearings, and her case has been remanded twice by the Social Security Administration's Appeals Council and once by this court. In the latest decision, an administrative law judge relied heavily on Ball's testimony from the second hearing, which occurred back in December 2021. Normally that wouldn't be a problem. But the recording from the 2021 hearing appears to have been lost, and the record does not contain a complete, certified transcript of Ball's hearing testimony. The ALJ nevertheless concluded that Ball could still work despite her severe mental impairments if she limited (among other things) her interactions with supervisors, coworkers, and the general public.

Ball seeks judicial review of the latest ALJ decision, arguing that substantial evidence does not support it and that the decision is marred by substantive and procedural errors. I agree that the Social Security Administration erred when it failed to produce a typed copy or

verbatim recording of the December 2021 administrative hearing, and that error was not harmless. Accordingly, I will reverse the decision denying Ball disability benefits and remand the matter for further proceedings.

## BACKGROUND

Ball applied for disability insurance benefits under Title II of the Social Security Act, claiming that she was unable to work due primarily to mental health issues. *See* R. 190–96, 220–31.[1]

### I. Personal and Medical History

Ball was born in Illinois in 1970 and grew up in Michigan and Wisconsin. *See* R. 34, 624. After graduating from high school, she went to college briefly before dropping out and joining the Navy. *See* R. 624, 783–84. Ball received an honorable discharge after a few years of service. She then worked for years doing data entry or in customer service at big-box and grocery stores. *See* R. 197–219, 226, 232–43, 1254. More recently, Ball found work through staffing agencies, but each job was short-lived. She struggled to keep up mentally, which led to her being fired or simply walking out and not returning. *See* R. 1601. The last temp job ended in October 2016. *See* R. 224–25, 1254–55.

Ball has a long history of mental health issues. She received treatment primarily through the Department of Veterans Affairs, and in 2007, she was diagnosed with bipolar disorder. R. 623. Her symptoms, however, remained largely stable with medication. Ball also struggled with alcohol dependence and other addiction issues. In November 2015, she was hospitalized after apparently overdosing on Ambien and alcohol. *See* R. 337–421. Ball re-established care with a psychiatrist and later attended psychotherapy, with treatment focusing

[1] The transcript is filed on the docket at ECF No. 10-1.

on medication management, anxiety, and difficulties with interpersonal relationships. *See* R. 422–67, 619–29, 643–45, 673–74, 692–93, 718–28, 736–54, 781–97, 813–31, 853–72, 890–94, 904–16, 990–98, 1058–60, 1066–68, 1569–73, 1587–1613, 1615–30, 1636–42, 1648–49, 1663–70, 1783–1807, 1813–63. Her recent diagnoses include anxiety disorder and borderline personality disorder.

Ball also suffered from several physical issues. She stuttered while speaking, especially when nervous or talking over the phone. *See* R. 462–66, 506, 514, 550–51, 722, 737, 749, 783, 813. And she had problems with her lower extremities. In May 2018, Ball reported swelling in her ankles and calves with prolonged standing, and she exhibited 1+ edema bilaterally upon examination. R. 498–500. A few weeks later, Ball told her primary care provider, James Burwitz, that she had pain and swelling in both legs. *See* R. 489–93, 652–56. Dr. Burwitz observed trace to 1+ edema bilaterally and assessed pedal edema of uncertain etiology. He prescribed a water pill and advised Ball to "continue a low-salt diet and elevate the feet when sitting." R. 491–92, 655. Ball continued to complain about bilateral leg pain at a follow-up appointment in September 2018. R. 675. Around that same time, she was gaining weight, with a BMI exceeding 31. *See* R. 491, 495, 500, 678, 1619, 1653, 1660. Ball remained on the water pill through at least June 2019. *See* R. 490–91, 972, 987, 1049, 1062.

**II. Procedural History**

Ball applied for disability benefits in September 2018. *See* R. 13, 190–96. She alleged that she was disabled as of October 17, 2016 (when she was forty-six years old) due to depression, anxiety, a speech impairment, and ankle pain. *See* R. 220–31. In her application materials, Ball reported significant difficulties getting along with others, especially when at work. *See* R. 248–59. She said she often felt paranoid that her boss and coworkers were out to

get her, she perceived every request or direction as unfair criticism, and she became easily frustrated with her coworkers. Ball also reported difficulties remembering, completing tasks, concentrating, following verbal instructions, and handling stress and changes in her routine. As for physical limitations, Ball estimated that she could walk for about thirty minutes without a break.

The state agency charged with reviewing disability applications on behalf of the Social Security Administration denied Ball's disability claim upon its review of the available medical records. *See* R. 57–92. At the initial level, reviewing physician Mina Khorshidi found that Ball did not suffer from any severe physical impairments. R. 62–64. The reviewing physician at the reconsideration level largely agreed, though she found some difficulties communicating. R. 79–82, 86–87.

The state agency also assessed Ball's mental impairments. The reviewing psychologists, Soumya Palreddy and Lisa Fitzpatrick, documented their findings using two different worksheets: a psychiatric review technique (PRT) form and a mental residual functional capacity assessment (MRFCA) form. *See* R. 64–66, 68–69, 81–84, 87–89. On the PRT form, Dr. Palreddy assessed a marked limitation[2] in Ball's ability to interact with others and explained that Ball's "instability of relationships would seem to prevent [her] from maintaining prolonged superficial relationships." R. 65–66. Dr. Palreddy also assessed several social-interaction limitations on the MRFCA form. R. 68–69. Dr. Fitzpatrick disagreed somewhat. Although she repeated Dr. Palreddy's narrative findings regarding interacting

[2] "Marked" means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).

with others, she assessed only a moderate limitation[3] in that area of mental functioning. R. 82–84. And on the MRFCA form, Dr. Fitzpatrick explained that Ball was "[a]ble to tolerate the minimum social demands of simple-task settings within the parameters noted above." R. 88.

After the state-agency denial, Ball received a hearing with an ALJ. *See* R. 30–56, 1249–75. Ball testified that she was unable to work due primarily to issues getting along with others. R. 1254–59. She said she last worked in September 2016 and that she kept leaving jobs or being fired because her mental health "was not working out anymore." R. 1254–56. Ball told the ALJ that, after a few months on the job, she would start to think her coworkers were talking about her behind her back and trying to sabotage her. She said she went home crying every night. Ball also indicated that going out in public was "pretty hard" for her. R. 1257. She said she did all her grocery shopping at 5:00 a.m., and she didn't go out night at all because her "road rage [was] horrible." *Id.* Ball testified, "It's like as soon as I leave the house, every single thing somebody does just irritated me to no end." *Id.*

Thereafter, Ball's disability claim worked its way through the administrative and judicial processes. The ALJ denied the claim in January 2020, *see* R. 10–29, 1147–66, and the Appeals Council denied Ball's request for review, *see* R. 1–6, 1167–72, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see* *Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Ball sought judicial review under section 205(g) of the Social Security Act, and the parties stipulated to a remand. *See* R. 1173–1206. The Appeals Council vacated the

[3] "Moderate" means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).

ALJ's decision and remanded for a new hearing and decision. *See* R. 1207–13. Ball and her lawyer appeared before the ALJ again on December 1, 2021. *See* R. 1245, 1283–1301, 1312–16. A few weeks later, the ALJ issued another unfavorable decision. *See* R. 1217–42.

After Ball filed written exceptions to the ALJ's 2021 decision, *see* R. 1308–11, the Appeals Council assumed jurisdiction of the case and remanded it back to the ALJ to resolve several issues. *See* R. 1245–48. The remand order noted that the record was incomplete because it did not contain the recording from the December 2021 hearing. R. 1245. The remand order further noted that the Appeals Council had requested a copy of the hearing recording; however, the hearing office provided only "a partial transcript" of the hearing. *Id.* According to the Appeals Council, the partial transcript did not "contain sufficient information to evaluate the claimant's exceptions regarding the vocational expert's testimony about the methodology used to determine the number of jobs available to the claimant within her residual functional capacity." *Id.* The Appeals Council instructed the ALJ to "[h]old a new hearing and ensure that an audible version of the hearing recording [was] uploaded in the certified electronic record." R. 1246.

Ball and her lawyer appeared before a different ALJ in January 2025. *See* R. 1130–46. That hearing lasted less than thirty minutes. The ALJ noted that he had reviewed the transcript and the record from the prior hearings, including the partial transcript of the December 2021 hearing. R. 1135, 1137. Ball confirmed that her condition hadn't changed since the last hearing and that she wasn't able to work at any time in those intervening years. R. 1138–39. The ALJ also heard testimony from a vocational expert. R. 1139–45.

In February 2025, the ALJ issued another decision finding that Ball was not disabled. *See* R. 1100–29. The ALJ considered the disability application under 20 C.F.R. § 404.1520,

which sets forth a five-step process for evaluating DIB claims. *See* R. 1103–21. Relevant here, the ALJ determined at step two of that process that, through her date last insured, Ball had four severe impairments: speech disorder, personality disorder, anxiety disorder, and bipolar disorder. R. 1106–07. The ALJ explained that the record reflected "conservative treatment for relatively minor, resolved, nonrecurring, or controlled complaints and conditions, including bilateral foot pain with edema, headaches, and obesity with BMI noted over 31." R. 1106.

At step three, the ALJ determined that, through the date last insured, Ball had a moderate limitation in interacting with others. R. 1108. The ALJ acknowledged that Ball "reported significant struggles with interpersonal relationships to her providers" and alleged at "the prior hearing" that she had significant difficulties in that functional area. *Id.* However, according to the ALJ, Ball's providers noted that she was consistently cooperative and reasonable. The ALJ also acknowledged that Dr. Palreddy had assessed a marked limitation in social functioning. But the ALJ said he had considered all the available evidence and concluded that the record supported only a moderate limitation.

Between steps three and four, the ALJ assessed Ball's residual functional capacity—that is, the most she could do despite her physical and mental limitations, *see* 20 C.F.R. § 404.1545(a). The ALJ determined that, through the date last insured, Ball had the RFC to perform a full range of work at all exertional levels with several mental health limitations. R. 1109. Specifically, the ALJ found that Ball was limited to (1) jobs where tasks could be performed independently and that did not involve tandem tasks, (2) occasional interaction with supervisors and coworkers, and (3) jobs that did not require any interaction with the public.

In reaching that RFC assessment, the ALJ considered Ball's subjective allegations, the objective medical evidence, and the medical opinion evidence. *See* R. 1109–18. The ALJ first summarized Ball's allegations, including those made in her disability reports, her function reports, and at "the prior hearing." R. 1110–11. The ALJ then detailed Ball's mental health treatment from prior to the alleged onset of disability up to the date last insured. R. 1111–14. According to the ALJ, Ball's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the overall record, which revealed good objective mental status examination findings, improvement of symptoms with conservative treatment, and a generally good ability to tend to activities of daily living. Finally, the ALJ explained why he did not find persuasive Dr. Palreddy's assessed marked limitation in social functioning and why he was generally persuaded by Dr. Fitzpatrick's PRT findings and narrative limits. R. 1115–17. The ALJ did not mention any opinions offered by Ball's primary care physician, Dr. Burwitz. *See* R. 1114–18.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Ball did not have any past relevant work. R. 1118. The ALJ determined at step five that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Ball could have performed. R. 1118–20. Based on the step-five finding, the ALJ determined that Ball was not disabled at any time from the alleged onset date (October 17, 2016) through the date last insured (December 31, 2021). R. 1121.

The Appeals Council declined Ball's written exceptions and didn't assume jurisdiction of the case, *see* R. 1083–99, making the ALJ's 2025 decision a final decision after remand, *see* 20 C.F.R. §§ 404.955, 404.984.

This action followed. *See* Compl., ECF No. 1.

## LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, modify, or reverse the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Ball seeks reversal and remand for rehearing, arguing that substantial evidence does not support the ALJ's decision and that the decision is marred by substantive and procedural errors. She first contends that the Social Security Administration committed reversible legal

error when it failed to produce a full transcript of the second administrative hearing and relied on Ball's testimony at that hearing in rejecting her claim for benefits. The Commissioner insists that the ALJ reasonably based the latest decision on the record available.[4]

The Social Security Act requires the Commissioner to file, as part of his answer to a federal complaint, "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). Similarly, social security regulations mandate that "[a]ll evidence upon which the administrative law judge relies for the decision must be contained in the record." 20 C.F.R. § 404.951(b). The regulations also indicate that "[a]ll hearings will be recorded" and that "[t]he hearing recording will be prepared as a typed copy of the proceedings if . . . [the claimant] seek[s] judicial review" in federal court. 20 C.F.R. § 404.951(a)(2). "The official record of your claim will contain all of the marked exhibits and a verbatim recording of all testimony offered at the hearing." § 404.951(b).

The Social Security Administration failed to comply with its own regulations in this case. Ball and her prior lawyer appeared before an ALJ for a second administrative hearing on December 1, 2021. It appears that the hearing—which lasted over fifty minutes—was recorded, but for some unknown reason, it was not fully transcribed. Instead, the record contains a five-page "Log Report" of the hearing testimony that uses abbreviations, lacks complete sentences, and contains many ellipses. *See* R. 1312–16. Here's just one example:

| | | |
|---|---|---|
| 12:14:03 PM | ALJ | what about being around strangers |
| 12:14:09 PM | Claimant | I can do it if I have to, I usually get very agitated and angry, like when driving...with now you can do your orders online, they come and deliver stuff to the house, I'm doing that |

[4] All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4 & 7.

R. 1314. And unlike the other hearing transcripts in the record, the Log Report does not contain a certification indicating that it is "a true and complete transcription of the testimony" provided at the hearing. *See* R. 56, 1146. It's unclear how the Log Report was created, whether a recording of the hearing exists, and if the report was reviewed for accuracy and completeness. *See* Hearings, Appeals and Litigation Law Manual (HALLEX) HA 01420.015(A) (last updated June 26, 2023) ("The transcript of the hearing is a written record of the testimony given at the hearing before the administrative law judge (ALJ). The court legal assistant must review the transcript(s) of the hearing(s) for accuracy and completeness before placing it in the certified administrative record (CAR)."). Thus, the agency violated § 404.951 by not providing a "typed copy" of the hearing recording and by not including in the record "a verbatim recording of all testimony offered at the hearing."[5] *See Petrosyan v. Acting Comm'r of Soc. Sec.*, No. 3:22-cv-461-MMH-PDB, 2023 WL 7482768, 2023 U.S. Dist. LEXIS 179090, at *12–13 (M.D. Fla. May 9, 2023) (recommending reversal and remand in a social security appeal because the record lacked "a verbatim recording of all testimony offered at the hearing as required by the regulations"), *adopted* 2023 WL 6439571, 2023 U.S. Dist. LEXIS 177689 (M.D. Fla. Oct. 3, 2023).

The Commissioner criticizes Ball (and her attorney) for waiting until now to contest the accuracy of the December 2021 hearing transcript. He cites no authority suggesting that waiver or forfeiture applies to cases involving a missing hearing recording or a non-certified, partial hearing transcript. Even if those doctrines could theoretically apply to these circumstances, they would not help the Commissioner here. It's true that prior counsel did

[5] The Social Security Administration, however, did not violate the Social Security Act, as the agency did include the partial transcript in the certified copy of the administrative record. *See* R. 1312–16. The record therefore does contain "the evidence upon which the findings and decision complained of are based." § 405(g).

not object to the inclusion in the record of the partial transcript. *See* R. 1132–34. But he did indicate that not having the recording was "a big issue" because he couldn't review that testimony with his client. R. 1137. Also, at the time, counsel did not know whether—and to what extent—the ALJ would rely on the Log Report in reaching his decision. After all, social security regulations did not require the typed copy of the proceedings to be part of the record until Ball sought judicial review. *See* § 404.951(a). And Ball—with a new attorney on board—promptly raised the issue in her first federal appeal since the December 2021 hearing.

The Commissioner also faults Ball for not identifying any specific inaccuracies within the partial transcript. As support, the Commissioner relies on *Halvorsen*, a case where a magistrate judge in the Central District of Illinois rejected a social security plaintiff's argument about defects in a hearing transcript. *See Halvorsen v. Comm'r*, No. 10-2251, 2012 WL 1080819, 2012 U.S. Dist. LEXIS 45199, at *5–13 (C.D. Ill. Mar. 14, 2012). The court noted that its "primary concern [was] whether an official transcript, without omissions, would substantially aid Plaintiff or whether the absence of such a transcript in any way prevents fair judicial review." *Id.* at *11 (citations omitted). In addressing that concern, the court concluded that the transcript, while imperfect, was "essentially intelligible," that the testifying doctor's opinion was "clear from the transcript," and that a reasonable person could rely on the transcript to determine the doctor's opinion, notwithstanding occasional omissions. *Id.* at *11–12. Thus, according to that court, "the unofficial transcript may constitute substantial evidence supporting [the ALJ's] RFC determination." *Id.* at *12.

The Commissioner's reliance on *Halvorsen* is misplaced. Like the unofficial transcript in that case, the partial transcript here is essentially intelligible and Ball's alleged limitations are clear from the partial transcript. *See* R. 1312–16. However, that unofficial transcript was

prepared by the plaintiff's lawyer, apparently from an audio recording. *See Halvorsen*, 2012 U.S. Dist. LEXIS 45199, at *6. In our case, it's unclear who prepared the Log Report, and it appears no audio recording is available. Moreover, the plaintiff in *Halvorsen* alleged only a substantive error in the ALJ's reliance on the unofficial transcript; he did not argue—as Ball does here—that the agency failed to comply with social security regulations in preparing the official record. *See id.* at *13 ("Furthermore, this Court makes no determination regarding Defendant's compliance with 20 C.F.R. § 404.951, as the parties have not presented any argument on this point."). Further complicating the Commissioner's reliance on *Halvorsen* is the fact that the commissioner in that case subsequently produced the official hearing transcript during objection proceedings. *See Halvorsen v. Comm'r*, No. 10-CV-2251, 2012 WL 1646864, 2012 U.S. Dist. LEXIS 65698, at *2–3 (C.D. Ill. May 10, 2012) (noting that the defendant "attached a certified transcript of the [disputed] administrative hearing" to its objection response). The Commissioner cites no other authority permitting an ALJ to rely on an unofficial hearing transcript.[6]

The agency's failure to comply with its own regulations is a legal error. The Seventh Circuit has repeatedly held that administrative error is subject to harmless-error review and that remand is not required if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Keys v. Barnhart*, 347 F.3d

[6] The Commissioner has cited one other case involving a defective transcript. However, the issue in that case was whether the social security plaintiff was entitled to a sentence-six remand based on "inaudible" portions of an official hearing transcript. *See Acevedo v. Barnhart*, 474 F. Supp. 2d 1001, 1004–06 (E.D. Wis. 2007). That case did not involve an unofficial transcript, and the plaintiff there merely argued that the record was incomplete, not that the agency had committed a procedural legal error.

990, 994–95 (7th Cir. 2003)). "[T]he harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting [the reviewing court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey*, 641 F.3d at 892. Rather, the question for this court "is now prospective—can [I] say with great confidence what the ALJ would do on remand—rather than retrospective." *Id.*

The Commissioner does not directly argue that the agency's failure to comply with § 404.951 was harmless. Rather, he insists that the record was sufficient as is. And he faults Ball for not demonstrating any prejudice resulting from the ALJ's reliance on the Log Report.

I cannot say with great confidence that the ALJ would reach the same result on remand. I assume at this point that the audio recording has been lost and that a complete transcript of the December 2021 hearing will never be produced. The question therefore is whether I am confident that the ALJ could produce a sufficient decision without it; I am not. In the most recent decision, the ALJ relied on Ball's December 2021 hearing testimony repeatedly, particularly when evaluating Ball's mental impairments at step three of the sequential evaluation process. *See* R. 1107–08, 1110–11, 1115, 1118. It's clear from that decision—and from my review of the rest of the record—that the most significant impediment to Ball's ability to sustain gainful work was her difficulties getting along with others given her various mental impairments, including borderline personality disorder. The ALJ found that Ball had a moderate limitation in that area of mental functioning, and the assessed RFC limits Ball's interaction with supervisors (occasional), coworkers (occasional), and the general public (none). *See* R. 1108–09.

However, because I am not convinced that substantial evidence supports the ALJ's assessment of Ball's ability to interact with others, accurate and more fulsome hearing

testimony is crucial in this case. If credited, Ball's subjective statements would seem to support a disability finding. She repeatedly told providers that she struggled significantly with interpersonal relationships, that minor issues enraged her, and that she had trouble leaving the house most days. *See* R. 780–88, 990–98. The ALJ seemed to believe that Ball's claimed "road rage" while driving was inconsistent with the record because treatment notes reflected only "complaints of increased irritability while driving." R. 1108 (citing Exhibit 9F/24; prior hearing record). But it's not hard to see how increased irritability with drivers not using their turn signals or driving without their lights on, R. 995, would lead to emotional outbursts in the car, especially for someone diagnosed with personality, bipolar, and anxiety disorders.

The other reasons the ALJ provided to support his social-interaction finding are similarly questionable. He said that, despite Ball's testimony and reported limitations, "providers noted that she was consistently cooperative and reasonable." R. 1108 (citing Exhibits 3F; 6F; 9F; 13F; 14F). That observation, however, "overlook[s] the fact that the more controlled and comfortable environments of . . . a therapist's office are quite different from the work setting." *Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL 4346613, 2024 U.S. Dist. LEXIS 177213, at *52–53 (N.D. Ill. Sept. 30, 2024); *see also Simon v. Comm'r*, 7 F.4th 1094, 1107 (11th Cir. 2021) ("[W]hen evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace."). The only other thing the ALJ had to say about Ball's ability to interact with others was that he had "considered all of the evidence of record available at the hearing level" and that he disagreed with Dr. Palreddy's finding that Ball had a marked limitation in social functioning. R. 1108 (citing Exhibit 2A). But that "analysis" invites more questions than it answers. What evidence did the ALJ

supposedly consider? And, more importantly, *how* is that evidence inconsistent with Dr. Palreddy's findings and Ball's subjective statements?

In sum, the Social Security Administration erred when it failed to produce a typed copy or verbatim recording of the December 2021 administrative hearing, and that error was not harmless. The ALJ relied on Ball's 2021 hearing testimony repeatedly throughout the latest administrative decision. And, given the lack of evidence or explanation supporting the ALJ's social-interaction analysis, accurate and fulsome testimony is needed in this case. Because I find that the agency's failure to comply with its own regulations amounted to reversible error, I don't need to address Ball's other arguments about the ALJ's evaluation of the medical opinion evidence.

## CONCLUSION

The transcript issue here infected the ALJ's 2025 decision. Accordingly, for all the foregoing reasons, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On remand, the Commissioner shall (1) either produce a complete, certified transcript of the December 2021 administrative hearing or offer the plaintiff a new hearing and (2) issue a new decision free from legal error and supported by substantial evidence. That decision shall address Dr. Burwitz's statement about Ball elevating her feet when sitting, *see* R. 492, and all the prior administrative medical findings issued by the reviewing state-agency

psychologists, *see* R. 64–66, 68–69, 82–84, 87–89. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 24th day of September, 2026.

STEPHEN C. DRIES
United States Magistrate Judge